# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1263

_____

United States of America,            *
                                       *

     Plaintiff - Appellee,      *
                                       *   Appeal from the United States
v.                            *   District Court for the
                                     *   Northern District of Iowa.
Alan Lee Ault,               *
                                       *

     Defendant - Appellant.   *

_____

Submitted: January 12, 2006
Filed: May 4, 2006

_____

Before LOKEN, Chief Judge, McMILLIAN[*] and MELLOY, Circuit Judges.

_____

LOKEN, Chief Judge.

Alan Lee Ault pleaded guilty to one count of attempting to manufacture methamphetamine and one count of possessing a firearm after having been convicted of a domestic violence offense. See 21 U.S.C. §§ 841, 846; 18 U.S.C. § 922(g)(9). He was sentenced the day after the decision in United States v. Booker, 543 U.S. 200 (2005). Correctly anticipating our interpretation of sentencing procedure under

_____

[*]The Honorable Theodore McMillian died on January 18, 2006. This opinion is being filed by the remaining judges of the panel pursuant to 8th Cir. Rule 47E.

Booker, the district court[1] first determined that Ault's sentencing range under the now-advisory Guidelines was 235-293 months. Then, the court "considered everything set forth in 18 [U.S.C. §] 3553(a), (1) through (7), in deciding in my discretion what sentence to impose." The court sentenced Ault to concurrent sentences of 240 months on the drug count and 120 months on the firearm count. Ault appeals, arguing that the court erred by considering unrelated transactions in determining drug quantity and by imposing a two-level enhancement for possessing the firearm in connection with his drug offense.[2] We affirm.

## I. Background

In his plea agreement, Ault stipulated to engaging in a number of drug-related activities in February and March 2004. On February 6, he attempted to steal anhydrous ammonia from a local business. Two days later, when police officers investigated possible narcotics activity in a motel room in Cedar Rapids, they found Ault alone in the room, a bag containing less than 2 grams of methamphetamine in his pocket, and a loaded sawed-off rifle under the mattress. Ault admitted he had been smoking methamphetamine "foils." This rifle was the firearm he later pleaded guilty to unlawfully possessing.

On February 20, police received an anonymous tip that methamphetamine was being manufactured and sold in the garage of the Cedar Rapids residence of John Peters, where Ault was living from time to time. Early on the morning of March 22,

[1]The HONORABLE LINDA R. READE, United States District Judge for the Northern District of Iowa.

[2]Ault also argues that the district court committed Booker error by applying the preponderance of the evidence standard at sentencing. We have previously ruled that the preponderance standard continues to be proper for sentence-enhancing fact findings. See United States v. Pirani, 406 F.3d 543, 551 n.4 (8th Cir.) (en banc), cert. denied, 126 S. Ct. 266 (2005).

officers began surveillance of the Peters residence after smelling ether emanating from the garage or a nearby truck. When Ault and his girlfriend emerged from the home, they agreed to be interviewed at the police station. At the sentencing hearing, the interviewing officer, Investigator Anthony Robinson, testified that Ault denied knowing of methamphetamine manufacturing at the Peters residence but admitted to using the drug with Peters three weeks earlier. When Robinson asked where Ault obtained the methamphetamine, Ault admitted that he had exchanged 400-count packages of 120-milligram pseudoephedrine pills for one-eighth ounce quantities of methamphetamine with a man named Josh Willet on six or seven occasions. This testimony was supported by Robinson's contemporaneous report of the interview, and by the testimony of the other officer who was present during the interview.

In a warrant search of the Peters residence later that day, police found numerous items used to manufacture methamphetamine in various rooms of the house and in the padlocked garage. Ault and Peters were indicted for attempting to manufacture and aiding and abetting the attempted manufacture of methamphetamine on or about March 22, 2004. Ault was later charged with the firearm offense in a superseding indictment.

The Presentence Investigation Report recommended that the drug quantities attributed to Ault under U.S.S.G. § 2D1.1 should include the one gram found in his pocket on February 8, the 4.72 grams that could have been manufactured from the items seized in the March 22 warrant search, and -- most significantly for base offense level purposes -- the 288 grams of pseudoephedrine Ault admitted exchanging with Josh Willet. The PSR also recommended a two-level enhancement of the methamphetamine manufacturing offense for Ault's possession of the loaded sawed-off rifle on February 8. Ault objected to these portions of the PSR. At the end of the sentencing hearing, the district court found that the PSR "correctly scored the guidelines sentence [based] upon the undisputed facts in the presentence report, as well as the evidence that I heard from the two police officers today."

## II. Drug Quantity

Ault first argues that the district court clearly erred when it included the pseudoephedrine pills he exchanged with Josh Willet in determining the offense level for his methamphetamine manufacturing offense.

The base offense level for drug offenses under the Guidelines is based upon drug quantity, which may include "[t]ypes and quantities of drugs not specified in the count of conviction" if they are relevant conduct. See U.S.S.G. § 2D1.1(c) & comment. (n.12). Relevant conduct is defined to include "all acts and omissions [of the defendant] that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2) & comment. (backg'd.). Factors to be considered in making this determination include the similarity, regularity, and temporal proximity of the charged and uncharged conduct. See U.S.S.G. § 1B1.3, comment. (n.9); United States v. Anderson, 243 F.3d 478, 485 (8th Cir.), cert. denied, 534 U.S. 903 (2001). Whether uncharged conduct is part of the same course of conduct as the offense of conviction is a fact-intensive inquiry. Thus, we review the sentencing court's relevant conduct findings for clear error. See United States v. Spence, 125 F.3d 1192, 1195 (8th Cir. 1997), cert. denied, 523 U.S. 1087 (1998).

Ault argues that the Willet exchanges were not relevant conduct because the government (i) presented no evidence establishing when the exchanges took place and (ii) failed to show "that the conduct involving Mr. Willet would have related to the attempt to manufacture methamphetamine on March 22, 2004." The first point is factually incorrect. On cross-examination, Investigator Robinson testified:

> Q. Did you ask [Ault] when these transactions [with Willet] had taken place?
>
> A. No, I did not.

Q.   All right. So these transactions could have taken place four years ago?

A.   In the context of when I was asking this, he said he was a recovering user. He last used a few weeks ago. And I'm asking, "Where did you get your meth from?" I -- I didn't ask him if it happened four years ago, but in the context of the questioning, it was when he last used; two or three weeks earlier. That's how he was obtaining his meth.

Ault's second point misconstrues the nature of the relevant conduct inquiry. The Willet exchanges may be found to be relevant conduct if they were part of "a continuous pattern of drug activity." United States v. Lawrence, 915 F.2d 402, 408 (8th Cir. 1990) (quotation omitted). Thus, they need not be directly related to the attempt to manufacture on March 22.

Here, the PSR noted, without objection, that Ault was a long-time regular user of methamphetamine who would consume as much as an "eight-ball" per day. The government established that, within a six-week period, Ault attempted to steal anhydrous ammonia that is used to manufacture methamphetamine; possessed and smoked methamphetamine in a motel room with a loaded firearm; exchanged pseudoephedrine pills, an important precursor, for one-eighth ounce quantities of methamphetamine; and attempted to manufacture methamphetamine with John Peters at their residence. Viewed from Ault's perspective, his drug activities during this period included attempting to manufacture methamphetamine and providing equipment and precursor chemicals to other manufacturers, all for the purpose of obtaining the drug for his own use. All this conduct involved the same drug and occurred within a short time period. Based upon this evidence and our prior relevant conduct decisions, the district court did not clearly err in finding that the pseudoephedrine pills exchanged with Willet were relevant conduct in determining the base offense level for Ault's drug offense. Compare Anderson, 243 F.3d at 485.

### III. The Firearm Enhancement

Ault next argues that the district court clearly erred by increasing the total offense level for his drug offense by two-levels because "a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The Guidelines provide that this enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n.3). "[T]he dangerous weapon enhancement applies if the firearm is present during 'relevant conduct,' as defined by U.S.S.G. § 1B1.3(a)(2), not merely during the offense of conviction." United States v. Savage, 414 F.3d 964, 966 (8th Cir. 2005); see United States v. Barresse, 115 F.3d 610, 612 (8th Cir. 1997). We review the district court's finding that the weapon was connected to the drug offense for clear error. See United States v. Britton, 68 F.3d 262, 265 (8th Cir. 1995).

Ault argues that the sawed-off rifle was seized in his motel room on February 8, many weeks before the attempted manufacturing activity on March 22 and during an incident in which he was possessing and using but not manufacturing methamphetamine. This contention, like his drug quantity contention, ignores the scope of the relevant conduct concept as defined in the Guidelines. In a two month period beginning February 6, 2004, Ault attempted to steal anhydrous ammonia, exchanged pseudoephedrine pills for methamphetamine, and attempted to manufacture the drug with John Peters. Without question, these acts "were part of the same course of conduct . . . as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). Also during this period, Ault was found possessing and using methamphetamine in a motel room. Under the mattress was a sawed-off rifle, a weapon that "lack[s] usefulness except for violent and criminal purposes." United States v. Allegree, 175 F.3d 648, 651 (8th Cir. 1999).

As we have explained, this February 8 incident was relevant conduct because it was part of *Ault's* course of conduct -- his interrelated drug activities -- during this

two-month period. Thus, the district court's § 2D1.1(b) finding was not clearly erroneous because the firearm was present during relevant conduct. Moreover, even if a closer connection with Ault's methamphetamine manufacturing activities were required, it is surely more likely than not that this dangerous weapon was stored in the motel room for use in Ault's on-going efforts to steal and purchase equipment and precursor chemicals that he could use to exchange for methamphetamine or to manufacture methamphetamine himself.

The judgment of the district court is affirmed.

_____