# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2350

_____

United States

*Plaintiff - Appellee*

v.

Travis Harvey

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 10, 2021
Filed: June 24, 2021
[Unpublished]

_____

Before SMITH, Chief Judge, SHEPHERD, and GRASZ, Circuit Judges.

_____

PER CURIAM.

In this sentencing appeal, the appellant, Travis Harvey, contends the district court[1] committed procedural error in determining Harvey's United States Sentencing Guidelines offense level due to its error in determining the amount of

_____

[1]The Honorable Robert F. Rossiter, Jr., United States District Judge for the District of Nebraska.

methamphetamine attributable to Harvey. Having jurisdiction pursuant to 28 U.S.C. § 1291 and finding no error, we affirm.

Harvey was convicted at a jury trial of one count of conspiracy to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846. The indictment alleged that the conspiracy spanned the period between October 1, 2018, and November 16, 2018. The investigation which led to the indictment against Harvey began in mid-2017 and initially targeted Harvey's supplier, Keevan Dean. During the investigation, evidence was developed that Dean was a supplier of methamphetamine in the Des Moines-West Des Moines area. Investigators used a wide range of investigative techniques including physical surveillance and Title III intercepts of phone calls and text messages. Physical surveillance tracked Dean to Harvey's West Des Moines Apartment complex, and at trial, the government introduced transcripts of telephone calls between Dean and Harvey, during which they discussed the delivery of methamphetamine by Dean to Harvey. Following the investigation, Harvey was indicted on conspiracy charges along with Dean and Katina Martinez, Dean's girlfriend and accomplice.

Dean and Martinez both testified at Harvey's trial under cooperation provisions contained in their plea agreements. Dean testified that he began selling methamphetamine to Harvey in 2017, and that with the exception of a month or two, he delivered to Harvey three to four pounds of methamphetamine (typically three pounds), every two weeks, charging $5,500 per pound. He further stated that on the day of his arrest law enforcement officers executed a search warrant on his home and found $30,000 which he had received from Harvey the day before.

Martinez testified that her role in the operation was to assist Dean in the weighing, bagging, and delivery of methamphetamine, as well as in the laundering of the cash proceeds of methamphetamine sales and converting them into larger bills. Martinez stated that she began traveling with Dean to deliver methamphetamine to Harvey in May, June, or July 2018. In exchange for these

-2-

trips, Dean would pay Martinez $1,500 to $2,000 per trip as well as her rent. She stated that she and Dean would place methamphetamine in plastic bags and then place the plastic bags in soft lunch bags. Martinez testified that Dean would drive separately to Des Moines and that the methamphetamine was always in Martinez's possession during the trip. Upon arrival at Harvey's apartment, Martinez would hand Dean the lunch bag containing methamphetamine and Dean and Harvey would go into a different room. Dean would then emerge from the separate room with a lunch bag—sometimes the same lunch bag Dean carried into the room. Dean and Martinez would return to Martinez's apartment where Dean would give the lunch bag, which then contained cash, to Martinez. Martinez would then count and bundle the money which Dean had received from Harvey. According to Martinez, there would be "anywhere from ten to $25,000" inside the lunch bags. Martinez was arrested in Arizona in November 2018 while returning with a shipment of methamphetamine she had picked up in San Diego at Dean's instruction.

Drug Enforcement Administration agents executed a search warrant on Harvey's apartment on November 16, 2018. A search of the apartment revealed two plastic bags of methamphetamine, one located in a coffee table drawer and one located in Harvey's night stand. Later testing revealed that the bags contained 7.79 grams and 11.79 grams of methamphetamine. Agents also recovered $30,000 in cash.

At sentencing, Harvey objected to being held responsible for any quantity of methamphetamine delivered to him outside the dates of the conspiracy alleged in his indictment—October 1, 2018, to November 16, 2018—and he argued that the weight of methamphetamine to be used for sentencing purposes should be not less than 500 grams and not more than 1.5 kilograms as set forth in the original Presentence Investigation Report.

The district court overruled Harvey's objections and, crediting the testimony of Dean and Martinez, calculated the amount of methamphetamine by using the

time period of June to November 2018 with an average of two pounds of methamphetamine delivered to Harvey two times per month. This resulted in a total of 5.442 kilograms of methamphetamine. The district court noted that this calculation might benefit Harvey as Dean had testified that, in fact, three to four pounds of methamphetamine was delivered twice per month. However, the court also noted that Martinez testified that there may have been a couple of months when deliveries were not made. Using 5.442 kilograms as the drug quantity resulted in a Guidelines total offense level of 34 and a Guidelines range of 262 to 327 months imprisonment. The district court then sentenced Harvey to 240 months imprisonment.

In this appeal Harvey contends the district court committed procedural error in the application of the Guidelines in determining the drug quantity for which he should be held responsible. Specifically, he asserts that he should be held responsible only for methamphetamine delivered to him during the time period of the conspiracy as alleged in the indictment: October 1, 2018, to November 16, 2018. He points out that only approximately 20 grams of methamphetamine were found in his apartment when the search warrant was executed on November 16, 2018, which is inconsistent with the testimony that two to three pounds had been delivered to him by Dean and Martinez the day before. He further argues that the district court should have rejected the testimony of co-conspirators Dean and Martinez as to the quantities of methamphetamine delivered to him and the time span of those deliveries, because they lacked credibility as two drug dealers who testified under cooperation agreements with the government in hopes of receiving sentencing concessions. Finally, Harvey asserts that the investigation of Dean, which began in mid-2017, was extremely thorough, but did not produce any indication of Harvey's involvement in the drug conspiracy until the beginning date of the time period of the conspiracy alleged in his indictment, further diminishing the credibility of Dean and Martinez.

In reviewing a sentence, "[we] first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly

calculating) the Guidelines range." Gall v. United States, 552 U.S. 38, 51 (2007). The Guidelines range is determined in part by the Guidelines base offense level. See United States v. Tolliver, 570 F.3d 1062, 1065 (8th Cir. 2009). "The base offense level for drug offenses under the Guidelines is based upon drug quantity, which may include '[t]ypes and quantities of drugs not specified in the count of conviction' if they are relevant conduct." United States v. Ault, 446 F.3d 821, 823 (8th Cir. 2006) (alteration in original) (citation omitted). "Relevant conduct includes 'all acts and omissions of the defendant that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" United States v. Thomas, 760 F.3d 879, 888 (8th Cir. 2014) (quoting Ault, 446 F.3d at 823). "Drug quantity determinations 'are factual findings, which we review for clear error, applying the preponderance-of-the-evidence standard.'" United States v. King, 898 F.3d 797, 809 (8th Cir. 2018) (citation omitted). The district court's factual determinations are clearly erroneous where "the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." United States v. Miller, 511 F.3d 821, 823 (8th Cir. 2008) (citation omitted).

We find the district court did not clearly err in its drug quantity determination. The district court observed Dean and Martinez as they testified and heard their trial testimony. It was entitled to credit Dean's and Martinez's statements that Dean and Martinez delivered methamphetamine to Harvey, in one to three pound quantities, every two weeks with the exception of two months, beginning in June 2018 through November 16, 2018. The court then determined that during this time period an average delivery was two pounds, yielding a total of 5.442 kilograms of methamphetamine attributable to Harvey. When "the quantity of drugs was established through witnesses' testimony, the issue becomes one of credibility. . . . '[And] it is . . . well established that in sentencing matters "a district court's assessment of witness credibility is quintessentially a judgment call and virtually unassailable on appeal."'" United States v. Quintana, 340 F.3d 700, 702 (8th Cir. 2003) (citation omitted). Applying the standard of review for drug

quantity determinations, we find the district court's calculations to be sound, and, in fact, may have been generous to Harvey as Dean testified that three pounds of methamphetamine was delivered to Harvey every two weeks and Martinez testified that as much as five pounds at a time was delivered. Further, although only approximately 20 grams of methamphetamine were seized when Harvey was arrested, "when the amount of drugs seized does not reflect the scale of drug trafficking, 'the court shall approximate the quantity of the controlled substance' for sentencing purposes." United States v. Janis, 995 F.3d 647, 652 (8th Cir. 2021) (citation omitted). We find no error in the district court's approximation of the quantity of methamphetamine.

We affirm the judgment of the district court.[2]

_____

_____

[2]In his brief before this Court, Harvey also asserts that his sentence was substantively unreasonable. However, he provides no argument or citation of authorities to support a substantive unreasonableness claim. The argument is, therefore, waived. See White v. Jackson, 865 F.3d 1064, 1078 n.3 (8th Cir. 2017).