# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 22-1778

———————————————

United States of America

*Plaintiff - Appellee*

v.

Gregorio Soto, Jr.

*Defendant - Appellant*

——————

Appeal from United States District Court
for the Western District of Missouri - Kansas City

——————

Submitted: January 13, 2023
Filed: March 13, 2023

——————

Before SMITH, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

——————

LOKEN, Circuit Judge.

Gregorio Soto, Jr. pleaded guilty to the charge that he was an unlawful user of a controlled substance in possession of a firearm on February 24, 2017, when police officers conducting a warrant search of his Kansas City residence found evidence of drug trafficking and a loaded Smith & Wesson revolver (the "Smith & Wesson handgun"). See 18 U.S.C. §§ 922(g)(3), 924(a)(2). He was charged with this offense on December 15, 2020 and arrested on December 17. A warrant search of his

residence on December 20 found marijuana, cannabis flowers, cocaine, digital scales, drug packaging, stockpiles of magazines and ammunition, and a loaded 9-millimeter Glock Model 19 handgun (the "Glock handgun").

Soto pleaded guilty to the § 922(g)(3) offense in October 2021. The government agreed not to file charges related to the December arrest and warrant search (the "December 2020 search"), and to request a within-guidelines-range sentence. In calculating the advisory guidelines range, the PSR increased the offense level because Soto used drugs and the Glock handgun in connection with his § 922(g) offense. See USSG §§ 2K2.1(a)(4)(B)(i)(I), 2K2.1(b)(6)(B). The enhancements increased his offense level by ten levels, resulting in an advisory guidelines range of 70-87 months imprisonment.[1] The district court overruled Soto's objections to the enhancements, adopted the PSR in full, and imposed a 72-month sentence.

Soto appeals the sentence, asserting the district court[2] erred in imposing the enhancements. He argues that facts relating to the December 2020 search are not "relevant conduct" under the Guidelines because his December 2020 conduct was not "part of the same course of conduct" as his 2017 offense of being a drug user in possession of the Smith & Wesson handgun. See USSG § 1B1.3(a)(2) & comment. (n.5(B)(ii)) (2021). Concluding that Soto failed to preserve this issue in the district court, and that the court committed no plain error, we affirm.

---

[1]The PSR increased the base offense level from 14 to 20 because the Glock handgun was a "semiautomatic firearm that is capable of accepting a large capacity magazine." § 2K2.1(a)(4)(B)(i)(I). It increased the total offense level four more levels because Soto used the Glock handgun "in connection with" drug dealing, a felony offense in Missouri. See § 2K2.1(b)(6)(B).

[2]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri.

## I. Background

In August 2016, Kansas City police officers detained Soto when drugs and a firearm magazine were found in the vehicle he was driving with a stolen license plate. In January 2017, Soto was arrested outside his residence when cocaine was found on the ground near a parked vehicle. Soto was convicted of these drug offenses in state court in August 2017 and received a sentence of four years probation, which was suspended in May 2019.

In February 2017, police officers obtained a warrant to search Soto's residence based on the January arrest and several traffic stops in which drugs and firearms were recovered from individuals leaving the home. When they arrived to execute the warrant, Soto and four others were in the basement, where his bedroom is located. The search yielded six firearms and large stockpiles of magazines and ammunition scattered throughout the home. The firearms included the stolen Smith & Wesson handgun, found loaded with five rounds of ammunition beneath a couch cushion in the living room next to a marijuana pipe and Soto's employee identification card. Testing confirmed the firearm contained Soto's DNA. Officers found two more loaded firearms in Soto's bedroom, one that had a round chambered. Officers found 18.94 grams of marijuana and a digital scale with marijuana residue in Soto's bedroom, and two glass bongs and a glass smoking pipe with marijuana residue in a bedroom on the main floor.

After a grand jury indicted Soto for this offense in December 2020, officers came to arrest him at the same residence two days later. During a protective sweep of the home, officers saw the loaded Glock handgun in plain view on top of a vehicle in a garage adjacent to Soto's basement bedroom, and other items of contraband. Based on contraband in plain view, officers obtained and executed a warrant to search the home. As in February 2017, they found large stockpiles of magazines and ammunition plus drugs and drug paraphernalia in Soto's bedroom. FBI Special Agent

Randall Dolan conducted a post-arrest interview. At the sentencing hearing, Dolan testified that dealer quantities of marijuana and cocaine were found in the bedroom along with drug packaging, and that Soto said he does not allow others in the basement (despite the presence of four others there in February 2017). Soto also admitted he often smokes marijuana and occasionally uses cocaine.

## II. Was the Relevant Conduct Issue Preserved for Appeal?

When other conduct would be grouped with the offense of conviction under USSG § 3D1.2(d) for sentencing purposes, it is "relevant conduct" used in making offense level Guidelines determinations if it is "part of the same course of conduct . . . as the offense of conviction." § 1B1.3(a)(2). When appropriate, relevant conduct can increase the defendant's offense level even if he was not charged or convicted for that other conduct. § 1B1.3, comment. (n.5(A)).

If preserved, a Guidelines relevant conduct finding is reviewed for clear error. United States v. Ault, 446 F.3d 821, 823 (8th Cir. 2006). "Preserving an issue [for appeal] is a matter of making a timely objection to the trial court and clearly stating the grounds for the objection, so that the trial court has an opportunity to prevent or correct the error in the first instance." United States v. Williams, 994 F.2d 1287, 1294 (8th Cir. 1993) (quotation omitted); see Fed. R. Crim. P. 51(b); Puckett v. United States, 556 U.S. 129, 135-36 (2009). In this case, the government argues that we are limited to plain-error review because Soto failed to make a timely objection that gave the district court a fair opportunity to prevent or correct the relevant conduct error asserted on appeal, or to explain why it found that Soto's December 2020 conduct was relevant conduct under the Guidelines. We agree.

In his written objection to the six-level § 2K2.1(a)(4)(B) enhancement, Soto argued that the base level should be 14, not 20, because he "pled guilty to possessing a firearm on February 27, 2017," and "[t]here is no evidence [he] was in possession

of [the Glock handgun]" in December 2020. He objected to the § 2K2.1(b)(6)(B) enhancement for possessing the Glock handgun in connection with drug dealing because "[t]here was [only] a personal use amount of drugs found [in the February 2017 search]." In response, the Probation Office stated that Soto's conduct on the day he was arrested for the offense of conviction -- December 17, 2020 -- "is used as relevant conduct, pursuant to § 1B1.3." It further stated that, even though the Glock handgun was not found on Soto's person during the December 2020 search, "[his] possession of the firearm is based on a preponderance of the evidence." Probation "[stood] by its decision" to apply the four-level enhancement for possession of a firearm in connection with a drug dealing felony.

At the April 2022 sentencing hearing, the district court stated it had read the PSR and Soto's written objections and invited defense counsel to argue the objections before the government presented its witness. Defense counsel stated that Soto objected to a base offense level of 20 because, in the December 2020 search, "there was a [Glock handgun] found in the back of a vehicle. We don't believe there's sufficient evidence to suggest that the weapon was in possession of Mr. Soto." Defense counsel stated the four-year delay between the February 2017 and December 2020 searches was an additional basis for this objection. He did not refer to the four-level enhancement for possessing a firearm in connection with drug dealing.

The government then called Special Agent Dolan. After his direct and cross-examination concluded, the district court invited additional argument on the defense objections. Defense counsel argued the base offense level should be 14 based on the Smith & Wesson handgun found in 2017:

> Judge, our argument just is that there's no evidence that Mr. Soto was in possession of that [Glock] weapon for the base offense level. We think the base offense level should be 14 based on the weapon that he pled guilty to, the weapon from 2017. We know based on the history of that house, that multiple people were in that residence and in that

basement. They were there in February 2017. We also know that at least five people's DNA is on that [Glock] gun.

Turning to the four-level enhancement, counsel argued "there is no evidence of Mr. Soto ever selling drugs outside of the residence . . . [and] he informed the officers that he does use both cocaine and marijuana."

In overruling the objections, the district court explained that it overruled Soto's objection to the base offense level enhancement because "the testimony [of Agent Dolan] has shown under the proper standard of review that your client was at least in constructive possession of that [Glock handgun]." The court overruled Soto's objection to the four-level enhancement for possessing a firearm in connection with drug dealing because "[Dolan's] testimony . . . and the photographs that have been admitted into evidence . . . [show] the defendant had a distribution quantity of drugs along with the materials for weighing and distributing them."

On appeal, Soto argues that his written objections did not just argue that he did not possess the Glock handgun found during the December 2020 search. He also objected that he "pled guilty to possessing a firearm on February 27, 2017," and the Probation Office in response referred to USSG § 1B1.3, the relevant conduct guideline, which was sufficient to alert the court "that the offense level should be determined using only the facts related to the offense of conviction, which was possession of a firearm on February 27, 2017."

We are not persuaded that the Probation Office's response to written objections that did not clearly raise a relevant conduct issue avoids plain error review. But even if Soto's written objections and the Probation Office response alerted the district court to a relevant conduct issue, Soto failed to argue the issue when twice invited to explain his objections at the sentencing hearing. He did not cite § 1B1.3 or use the Guidelines specific phrase "relevant conduct." He focused on whether there was

sufficient evidence that he possessed the Model 19 Glock handgun recovered during the December 2020 search. The district court explicitly addressed that argument. Given the obvious similarities between Soto's conduct in January and February 2017 and what the officers found in the December 2020 search, the court was not required to consider *sua sponte* whether these incidents were something other than "part of the same course of conduct . . . as the offense of conviction." Thus, we are limited to plain error review.

### III. Merits of the Relevant Conduct Issue

To succeed on plain-error review, Soto must show: (1) error, (2) that is plain, (3) that affects his substantial rights, and (4) that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Pirani, 406 F.3d 543, 550 (8th Cir. 2005) (en banc). Here, the parties focus on the second prong of plain-error review, whether the district court plainly erred in determining that the facts from the December 2020 search qualified as "relevant conduct" under § 1B1.3. An error is plain if it is "clear" or "obvious." United States v. Olano, 507 U.S. 725, 734 (1993) (citations omitted). Soto argues that plain error occurred because the nearly four-year delay between Soto's offense of conviction for being a drug user in possession of a firearm in February 2017 and the December 2020 search precludes a relevant conduct finding. We disagree.

To be considered part of the "same course of conduct," the December 2020 conduct and Soto's February 2017 offense of being a drug user in possession of a firearm must be "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." § 1B1.3(a)(2) & comment. (n.5(B)(ii)). In applying § 1B1.3(a)(2), "a district court should consider the 'similarity, regularity, and temporal proximity' of the conduct in determining whether it is part of the same course of conduct or common scheme or plan." United States v. Anderson, 243 F.3d 478, 485 (8th Cir. 2001) (cleaned up); see

United States v. Mahone, 688 F.3d 907, 910 (8th Cir. 2012). Because no "bright-line rule" defines same course of conduct, we have observed that the state of the law "is unsettled." United States v. Lawrence, 915 F.2d 402, 406 (8th Cir. 1990). "[T]his is a fact intensive inquiry in which the district court is given broad discretion to assess the relevant facts." United States v. Montoya, 952 F.2d 226, 229 (8th Cir. 1991). Thus, factually relevant cases from other circuits can inform the analysis, but dicta from their factually irrelevant cases should not.

The nearly four-year time lag between the February 2017 offense of conviction and the December 2020 conduct is lengthy but not beyond our prior relevant conduct decisions. See Anderson, 243 F.3d 485 (several years); Lawrence, 915 F.2d 408 (four years); cf. United States v. Adams, 451 F.3d 471, 473 (8th Cir. 2006) (earlier involvement in different conspiracy). These decisions are consistent with the pertinent Guidelines commentary: "where the conduct alleged to be relevant is relatively remote to the offense of conviction, a stronger showing of similarity or regularity is necessary to compensate for the absence of temporal proximity." § 1B1.3, comment. (n.5(B)(ii)).

Here, the conduct similarity is striking: same residence; same bedroom; one or more firearms, drugs, and large quantities of ammunition found during each search; Soto concealed similarity in December 2020 interview by falsely claiming he does not allow others in the basement. Though only a user quantity was found in the bedroom in executing the 2017 warrant, the warrant was based on probable cause to believe drugs were being distributed from the residence. Dealer quantities were found in the December 2020 search.

Even without evidence of Soto's activities at the residence in the intervening period, during which he was tried and convicted of state drug offenses, we conclude this evidence is consistent with the findings of relevant conduct in Anderson, 243 F.3d at 485 ("a career of drug dealing"), and in Lawrence, 915 F.2d at 408

("continuous pattern of drug activity from at least 1984 until the summer of 1988"). Thus, the district court did not commit error, much less "clear or obvious" plain error, when it failed to find, *sua sponte*, that Soto's conduct revealed by the December 2020 arrest and search, as set forth in the PSR and in Special Agent Dolan's testimony, was *not* relevant conduct under § 1B1.3 of the Guidelines.

## IV. Conclusion

The judgment of the district court is affirmed.

_____