# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-4014

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| George E. Brown, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 11, 2007
Filed: August 23, 2007

_____

Before MURPHY, BEAM, and SHEPHERD, Circuit Judges.

_____

BEAM, Circuit Judge.

George Brown appeals his conviction and sentence for possession with intent to distribute more than five grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). We affirm.

## I. BACKGROUND

In March 2005, police in Sikeston, Missouri, executed a no-knock search warrant at Brown's residence, and found just over nine grams of a substance containing cocaine base. Brown contended that he won the drugs in a craps game, and did not intend to distribute the drugs. To obtain the search warrant, Detective Chris

Rataj[1] submitted an affidavit which included the following information: Detective Rataj's qualifications; Brown's criminal history; that Brown was being investigated for distributing crack cocaine; that Connie Franks had told police that she purchased crack several times from Brown at his residence; that a reliable confidential informant (CI) had, in the previous two days, bought crack cocaine and reported that Brown discussed having a handgun; and that Brown was a suspect who had admitted his involvement in a 1984 homicide.

Brown moved to suppress the evidence obtained as a result of the search warrant. Brown argued that the motion to suppress should have been granted because the search warrant affidavit contained false information–that Connie Franks had previously purchased drugs from Brown at his residence (when she later stated that she had never been to his home, but had purchased from him in other locations). Brown also contended that he was entitled to a Franks[2] hearing regarding the allegedly false information. The magistrate judge[3] conducted an evidentiary hearing, at which Connie Franks testified that she did not know where Brown lived and had never been to his home. Brown had apparently told Franks that he did not deal out of his home because he did not want his family to know what he was doing. Any time that she needed drugs from Brown, Franks was to call his cell phone. However, at this same hearing, the government played a tape recording of Detective Rataj's interview of

---

[1]At the motion to suppress hearing, Detective Rataj appeared to spell out his name for the court reporter as "Rataej." However, every other document, including the briefs and the warrant affidavit, spells his name as "Rataj." We will go with the majority version of Detective Rataj's name.

[2]Franks v. Delaware, 438 U.S. 154, 171 (1978) (holding that when a defendant makes a substantial preliminary showing that an intentional or reckless false, material statement was included in the search warrant affidavit, the Fourth Amendment requires that a hearing be held at defendant's request).

[3]The Honorable Lewis M. Blanton, United States Magistrate Judge for the Eastern District of Missouri.

Franks, which occurred before Brown's arrest. During that interview, Franks apparently told the officers where Brown lived and gave directions to his house.

Following the hearing, the magistrate judge recommended denying the motion to suppress. The district court[4] accepted this recommendation. Following a jury trial, Brown was convicted. The district court took into account many drug sales Franks testified about in determining the amount of drugs attributable to Brown for sentencing purposes. Additionally, the district court found that the evidence at trial was adequate to prove that the substance found in Brown's residence on the day the search warrant was executed was crack cocaine, as opposed to simply powder cocaine. Brown was sentenced to 240-months' imprisonment.

## II.    DISCUSSION

### A.    Motion to Suppress and Franks Hearing

We review the district court's factual findings for clear error, and its legal conclusions de novo regarding the sufficiency of a search warrant affidavit. United States v. Carpenter, 422 F.3d 738, 744 (8th Cir. 2005), cert. denied, 126 S. Ct. 1115 (2006). A search warrant is valid under the Fourth Amendment if it establishes probable cause–a fair probability that evidence of a crime will be found in the place to be searched. Id.

Brown argues that his Fourth Amendment rights have been violated because the search warrant affidavit contained false information about Franks' drug purchases from Brown at his residence. The district court found that based on the information on the interview tape, Franks may have led officers to believe that she knew where

---

[4]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

Brown lived and how to get to his home. Accordingly, if the information in the affidavit *was* false, it could not have been intentionally or recklessly false or misleading. The district court also found that even assuming that the allegedly false statements were excised, the information about the reliable CI's recent crack buys supplied probable cause. The district court further found that, even though not labeled as such, Brown was in effect given a Franks hearing because he was allowed to present evidence to challenge the veracity of the search warrant during an extensive hearing on the motion to suppress.[5]

In order to prevail on his Franks challenge, Brown must first demonstrate that the law enforcement official deliberately or recklessly included a false statement or omitted a truthful statement from the warrant affidavit. Id. at 745. Brown also needs to show that if the allegedly offensive content in the warrant affidavit is ignored, the remaining contents of the affidavit would not be able to establish probable cause. Id. We agree with the district court's analysis that Brown cannot meet either of these tests. Brown continues to insist on appeal that the statement in the warrant affidavit that Connie Franks had purchased crack cocaine from Brown out of his home was intentionally or recklessly false.[6] However, our review of the evidentiary hearing transcript reveals that if indeed the information was false, it was certainly not intentionally or recklessly included in the affidavit, because the officers likely did not

---

[5]We agree with the district court on this point. The magistrate judge found that Brown made a substantial preliminary showing that the information was false, triggering the right to the hearing, and then at the hearing, Brown was allowed to explore the veracity of Detective Rataj's affidavit in detail. Even though Brown couches his appeal in the terms that he was denied a Franks hearing, we will review the issue as though a Franks hearing was conducted, but that Brown was denied relief on the merits of the Franks challenge.

[6]Brown also complains about Detective Rataj lying about checking with the utilities board to confirm that he lived at 1704 Ford Street. None of this information was in the warrant affidavit, however.

know it was false. As earlier noted, at the evidentiary hearing, the government played a tape of Franks' law enforcement interview, and this tape apparently indicated that Franks, possibly while under the influence, told Detective Rataj not only where Brown lived, but gave directions to his house. So even if it is true that Franks had never actually been to Brown's house, that is not the impression she gave Detective Rataj while she was being interrogated.

Further, we agree with the district court that even if Franks' statements about buying crack cocaine from Brown's residence are excised, the warrant affidavit still supports a finding of probable cause. First, the affidavit contained the extensive law enforcement history of Detective Rataj, and the lengthy criminal history of Brown, including an arrest for possession of crack cocaine one month earlier. The affidavit was prepared on March 9, 2005, and in it, Detective Rataj states that a "reliable confidential informant" purchased cocaine from Brown at the Ford Street location on March 7 and March 8. From this information, the issuing magistrate knew that a reliable source had, presumably under police supervision, purchased crack cocaine from Brown at the residence to be searched, in the two days leading up to the request for the warrant. Brown complains that the affidavit does not elaborate on the officer's basis for describing the CI as reliable. While we agree that this would have been preferable, such elaboration is not essential for the affidavit to support a finding of probable cause. See United States v. Phillips, 88 F.3d 582, 584-85 (8th Cir. 1996) (affirming denial of motion to suppress when tip about a shooting was from an informant described only as someone "who had proven reliable in the past").

Given the totality of the circumstances, we find that the affidavit provided a substantial basis for the issuing magistrate to conclude that probable cause existed, even without the information regarding Connie Franks. And, if Franks' information is included in this analysis, it is not even a close call as to whether probable cause supported issuance of the warrant. Franks' information and the CI's information corroborated one another. United States v. Fulgham, 143 F.3d 399, 401 (8th Cir.

-5-

1998) (holding that probable cause supported issuance of the search warrant where "the information given by the first informant was corroborated with specific, consistent details provided by the second informant"). Accordingly, we affirm the district court's denial of Brown's Franks challenge and motion to suppress.

## B.    404(b) Evidence

Brown next argues that the district court erred in allowing the government to produce evidence at trial about Brown's prior drug sales, and points to the testimony of Connie Franks and Detective Rataj as the offending evidence. Following a cautionary 404(b) instruction by the court, Franks testified that she had purchased crack cocaine from Brown on numerous occasions in January 2005, a little over one month before Brown's arrest. Detective Rataj testified about the two controlled[7] buys that occurred the two days leading up to Brown's arrest. The government offered this evidence to show Brown's intent and knowledge. Brown argues that it was really improper "propensity" evidence.

We review the district court's Rule 404(b) evidentiary rulings for an abuse of discretion. United States v. Katz, 445 F.3d 1023,1029 (8th Cir.), cert. denied, 127 S. Ct. 421 (2006). Rule 404(b) is a rule of inclusion, and when determining the admissibility of Rule 404(b) evidence, courts consider the following: whether the evidence is relevant, similar in kind and close in time to the crime charged, proven by a preponderance of the evidence, and not unfairly prejudicial. United States v. Thomas, 398 F.3d 1058, 1062 (8th Cir. 2005). Regarding these four factors, it is largely undisputed that the testimony of Franks and Detective Rataj easily meets the first three. Evidence of very recent crack dealing is certainly relevant to the issue of

---

[7]Although Detective Rataj inexplicably did not state in the warrant affidavit that the CI buys were controlled buys, Detective Rataj's testimony indicates that they were controlled buys.

whether Brown knew how to, and intended to distribute the large rock that police found in Brown's kitchen during the execution of the search warrant. Further, it is similar in kind to the conduct that Brown was being charged with–distributing crack cocaine, and it occurred during the same time period as Brown's arrest. We also find that Franks' and Detective Rataj's testimony establishes these prior acts by a preponderance of the evidence.

Brown argues that this relevant evidence should have been excluded because it is unfairly prejudicial propensity evidence–that instead of proving that Brown intended to distribute the crack cocaine found during the search, the government simply proved he had dealt crack in the past and sought to convince the jury that he was acting in conformity with these prior acts. We disagree. Although the evidence is certainly prejudicial to Brown's defense, it is not unfairly so. Brown was charged with possession with intent to distribute the crack cocaine found in his residence on March 10, 2005. Brown contended that he had won the crack cocaine during a craps game, and that he did not intend to distribute it. It was not unfairly prejudicial for the government to present evidence that he actually had distributed crack cocaine in the months, and even days leading up to his arrest. We reject Brown's arguments to the contrary.

### C. Sufficiency and Sentencing: Crack Versus Cocaine Powder

Brown's next two arguments relate to his assertion that the government failed to prove that the substance found by officers in his residence during execution of the search warrant was crack cocaine, as opposed to simply powder cocaine, or even some form of cocaine base that is not "smokable." Brown points to the fact that the field test Detective Rataj conducted only tested for the presence of cocaine, and did not distinguish between cocaine base and cocaine powder. Brown also cites the testimony of Detective Rataj that there were some crumbs next to the larger rock of crack cocaine that had possibly been shaved off and those crumbs "looked like powder."

Due to this, Brown argues that there was not sufficient evidence to support his conviction because the evidence was lacking that the substance found in his residence was crack cocaine. He also argues that for purposes of sentencing, the district court should have calculated the drug quantity as though it were cocaine as opposed to crack cocaine.

For a sufficiency challenge, we view the evidence, and all of its inferences, in the light most favorable to the verdict. United States v. Lee, 451 F.3d 914, 916 (8th Cir. 2006). We will overturn Brown's conviction only if no reasonable jury could have found him guilty beyond a reasonable doubt. United States v. Bell, 477 F.3d 607, 613 (8th Cir. 2007). We review the district court's findings with regard to drug type for clear error. United States v. Williams, 486 F.3d 377, 383 (8th Cir. 2007).

Brown cites United States v. Brisbane, 367 F.3d 910 (D.C. Cir. 2004), in support of his argument that cocaine base must be smokable to be considered crack cocaine. In Brisbane, a government chemist had testified that the substance at issue was 49 percent cocaine base, but did not do tests to determine whether the substance was actually crack, or to determine if it was smokable. The court ultimately held that because "cocaine" and "cocaine base" had the same chemical meaning, the statute differentiating the two was ambiguous and the rule of lenity should apply. Therefore, unless the government proved that the substance was actually "crack," i.e., smokable, the defendant's conviction for possessing crack with intent to deliver could not stand. Id. at 911-14.

We begin by noting that we can find no precedent from our circuit adopting the Brisbane rationale.[8] In other words, in the Eighth Circuit, the government still need

---

[8]Our circuit has cited Brisbane in a published opinion once, in United States v. Robinson, 462 F.3d 824, 825 (8th Cir. 2006), cert. denied, 127 S. Ct. 1135 (2007), for the purpose of showing that there were other circuits which have held that the harsher penalties in the "cocaine base" statute are limited to "crack" offenses, as opposed to

only establish that a substance is cocaine base in order to convict a defendant of possession with intent to distribute cocaine base. E.g., United States v. Williams, 982 F.2d 1209, 1212 (8th Cir. 1992) (holding evidence sufficient that substances were "crack cocaine or cocaine base" where government expert performed chemical tests, and described the exhibits as a "big chunk" of cocaine base, which was the "proper" name for "rock" or "crack cocaine"). In a recent case, we acknowledged that although we use the terms interchangeably, crack is not the only type of cocaine base. Williams, 486 F.3d at 383-84. However, in cases where the issue was raised, the substance at issue certainly was crack cocaine. E.g., id. at 384 (citing United States v. Robinson, 462 F.3d 824, 825-26 (8th Cir. 2006), cert. denied, 127 S. Ct. 1135 (2007)). As will be discussed below, the evidence that the substance found in Brown's residence was crack cocaine is similarly strong in this case.

Accordingly, we decline Brown's invitation to foray any further into the issue of the possible difference between cocaine base and what is commonly known as "crack." The government in this case proved that the substance at issue was cocaine base, or crack cocaine, as contemplated by both the statute and the sentencing guidelines. First, the government chemist presented unchallenged testimony that the substance at issue tested positive for the presence of cocaine base. And, there was photographic evidence that the substance found during the search of the home was in "rock" form. See United States Sentencing Guidelines Manual § 2D1.1(c), Note D (defining crack cocaine as "the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.").

---

other forms of cocaine. We also cited it in passing in an unpublished per curiam opinion, United States v. Burse, 109 F. App'x 837, 838 (8th Cir. 2004), to point out that the defendant raised the "ambiguity" argument, but that it was immaterial because he pleaded guilty to possession with intent to distribute cocaine base.

Also, Connie Franks testified that Brown had repeatedly sold her crack cocaine in the past, and as an admitted former addict, she was somewhat of an expert on the subject of crack. See United States v. Meeks, 857 F.2d 1201, 1204 (8th Cir. 1988) (holding that evidence was sufficient to show that substance was cocaine, when "each of the witnesses personally used the substances which he or she believed to be cocaine"). Although Franks had not purchased any crack from Brown for about a month before his arrest, the frequency of her transactions with Brown provide evidence that Brown regularly dealt crack cocaine. It is "well established" that the identity of a controlled substance such as crack cocaine can be proved by circumstantial evidence and opinion testimony. United States v. Covington, 133 F.3d 639, 644 (8th Cir. 1998). Detective Rataj also testified that the substance seized on the day Brown was arrested was a "hard, rock-like substance." He explained his earlier "powder" statement by clarifying that,

> if you've got a large rock and you chip away a little bit off of it, or it's ground up, it's still rock, but now it's in a fine form. I didn't test any of that. I'm just saying it looked like powder on the counter because it was so small.

We find there was sufficient evidence for a reasonable juror to find that Brown possessed cocaine base with the intent to distribute it. The jury heard from a government expert that the substance tested positive for cocaine base, that the arresting officer described it as a rock-like substance, and a former crack-addict told the jury that Brown had regularly sold her crack cocaine. The government adequately carried its burden to prove beyond a reasonable doubt that the substance found in Brown's residence was crack cocaine.

With regard to sentencing, we note that a district court determines drug type at sentencing by a preponderance of the evidence. Williams, 486 F.3d at 383. Because we have found that the government adequately proved drug type beyond a reasonable doubt, we necessarily also find that it was not clear error for the district court to find

-10-

that the government proved by a preponderance of the evidence that the substance found during the execution of the search warrant was crack cocaine. And we further find that the government proved by a preponderance of the evidence that the drugs Brown sold to Franks were crack cocaine. Accordingly, we deny Brown's cocaine versus crack cocaine arguments.

### D.    Sentencing

Brown's final argument is that the district court erred in calculating the quantity of drugs attributed to him for the purpose of determining the relevant conduct portion of his sentence. At sentencing, the district court took into account the many drug sales Connie Franks testified about in determining the amount of drugs attributable to Brown. The district court ultimately determined that the charged offense totaled more than nine grams of cocaine base, and the relevant conduct quantity totaled more than fifty grams of cocaine base. We review the district court's calculations in this regard for clear error. United States v. Ault, 446 F.3d 821, 823 (8th Cir. 2006).

Evidence of uncharged drug exchanges may be considered relevant conduct if they are "part of a continuous pattern of drug activity." Id. at 824 (quotation omitted). Franks testified that she bought crack cocaine from Brown for a month, every day that she had money, which she defined as three or four days per week. Franks gave explicit details about where these transactions took place, how she contacted Brown, and a fairly specific dollar amount for these transactions. The district court appropriately considered her testimony when determining the amount of drugs attributable to Brown for purposes of the relevant conduct inquiry. We find no clear error in its calculations.

### III.    CONCLUSION

We affirm Brown's conviction and sentence.

_____