In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3608

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

THOMAS BRYANT,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 CR 71—**Elaine E. Bucklo**, *Judge*.

ARGUED OCTOBER 21, 2008—DECIDED FEBRUARY 26, 2009

Before RIPPLE, EVANS and SYKES, *Circuit Judges*.

RIPPLE, *Circuit Judge*. On April 8, 2005, Thomas Bryant provided Eddie Franklin with a substance containing cocaine base. Franklin delivered that substance to a confidential informant, who then turned the sample over to the Government. Mr. Bryant was subsequently arrested and charged with one count of conspiracy to distribute cocaine base. Mr. Bryant initially pleaded guilty to the charge, but later unsuccessfully sought to withdraw his guilty plea. At his sentencing hearing, the

district court sentenced Mr. Bryant to 180 months' imprisonment. Mr. Bryant now challenges the district court's denial of his motion to withdraw his guilty plea. He also raises several challenges to the sentence imposed by the district court. For the reasons set forth in this opinion, we affirm the district court's denial of his motion to withdraw his plea, vacate his sentence and remand for resentencing.

# I

## BACKGROUND

### A.

In 2005, a confidential informant contacted Eddie Franklin and attempted to purchase crack cocaine. Franklin agreed to obtain crack for the informant and called the defendant, Thomas Bryant, in an attempt to procure the drugs. On April 8, 2005, Mr. Bryant provided Franklin with a substance that Franklin described as hard and rock-like. Franklin then delivered the substance to the informant, who turned it over to Drug Enforcement Administration ("DEA") agents.

A DEA chemist analyzed the substance and, in his report, described it as a beige, compressed, moist powder. Although the substance tested positive for the presence of cocaine base, the chemist did not detect the presence of

sodium bicarbonate in the substance.[1] Later, a second DEA chemist analyzed the substance, described it as hard and rock-like and concluded that it contained sodium bicarbonate. After the second chemist completed his analysis, the Government discovered that he had mishandled evidence on several occasions during the time period in which he analyzed the substance at issue here. The Government decided that, because chain of custody issues may have resulted from the chemist's mishandling of evidence, it would introduce neither the substance nor the second chemist's report in its case against Mr. Bryant.

## B.

Several months after Franklin delivered the substance to the informant, the Government arrested Mr. Bryant and Franklin. Mr. Bryant subsequently entered a blind conditional guilty plea to one count of conspiracy to distribute cocaine base; he reserved the issues of the type and quantity of the drugs involved for a bench trial. At the time of his plea, he was aware that the first DEA chemist's description of the substance conflicted with Franklin's description. He believed, however, that the second DEA chemist's report would corroborate Franklin's description

---

[1] The presence of sodium bicarbonate in a mixture containing cocaine base is one of the indicators that the mixture is crack cocaine.

of the substance.[2] At the time of his plea, Mr. Bryant was unaware that the second chemist had mishandled evidence.

On October 27, 2006, Mr. Bryant moved to withdraw his plea. He claimed that he had been pressured into accepting the plea by his former attorney, who had stated that he was unprepared for trial. Mr. Bryant did not claim that he was innocent of the crime charged; rather, he indicated that he did not believe that the Government could prove its case beyond a reasonable doubt. The district court held a plea withdrawal hearing, during which both Mr. Bryant and his former attorney testified. The district court noted that Mr. Bryant's statements conflicted with his former attorney's statements. It concluded that Mr. Bryant had intentionally misled the court and denied Mr. Bryant's motion to withdraw his plea.

Mr. Bryant asserts that, immediately prior to his bench trial, he made a second motion to withdraw his plea on the basis of newly discovered evidence.[3] He con-

---

[2] The first DEA chemist to analyze the substance described it as a beige, compressed, moist powder. Both the second DEA chemist and Franklin described the substance as hard and rock-like.

[3] The Government contends that Mr. Bryant did not move to withdraw his plea; rather, it claims, he requested additional time "to figure it out and determine whether it matters." R.183-9 at 6. The Government characterizes Mr. Bryant's statements

(continued...)

tended that he should be allowed to withdraw his plea on the ground of newly discovered evidence in light of the Government's discovery that the second chemist had mishandled evidence and its decision that it would not introduce the substance or the second DEA chemist's report. The district court rejected this argument. It concluded that Mr. Bryant would not have altered his decision had he known that the second chemist mishandled evidence because Mr. Bryant "necessarily challenged [the chemist's] finding by saying he wasn't going to agree that it was crack." R.183-9 at 17.

On August 3, 2007, the district court held a bench trial to determine the type and quantity of drugs involved in the conspiracy.[4] Franklin testified that he had purchased

---

[3] (...continued)

as an emergency motion to continue the bench trial. Statements made by the district court support this characterization. R.183-9 at 18 ("I'm not going to continue [the trial], not for that reason.").

Although Mr. Bryant claims to have made a motion to withdraw his plea, there is no indication that he expressly requested that his plea be withdrawn. Nevertheless, because Mr. Bryant asserted that he should have "known about [the evidentiary problems] so [he] could have figured this out while [he] still had time," *id.* at 6, we shall assume, for the purposes of this appeal, that Mr. Bryant moved to withdraw his plea.

[4] The issue of the type and quantity of drugs involved in the charged crime was litigated on two occasions in the proceedings before the district court: First, in order to determine

(continued...)

crack from Mr. Bryant on numerous occasions. He re-
counted the details of the April 8 transaction, stating that
he received about sixty-three grams of crack cocaine
from Mr. Bryant. He described the substance he received

---

[4] (...continued)
the statutory maximum sentence, the court held a bench trial to
determine whether the Government had proven, beyond a
reasonable doubt, that Mr. Bryant had conspired to distribute
five kilograms or more of a mixture containing cocaine or fifty
grams or more of a mixture containing cocaine base. 21 U.S.C.
§ 846 ("Any person who attempts or conspires to commit any
offense defined in this subchapter shall be subject to the same
penalties as those prescribed for the offense, the commission
of which was the object of the attempt or conspiracy."); 21
U.S.C. §§ 841(b)(1)(A)-(C) (establishing statutory maximum
and minimum sentences for the crime of possession with
intent to distribute a controlled substance). As we previously
have noted, "all facts . . . that set the maximum possible punish-
ment under § 841(b) must be established beyond a reasonable
doubt to the satisfaction of the same body that determines
culpability under § 841(a)." *United States v. Brough*, 243
F.3d 1078, 1079 (7th Cir. 2001) (citing *United States v. Nance*, 236
F.3d 820 (7th Cir. 2000)). Next, the district court held a sentenc-
ing hearing to determine the type and quantity of the drugs
involved in the charged conspiracy; at that hearing, "[t]he
government [had] the burden of proving the quantity of drugs
attributable to [the] defendant for sentencing purposes by a
preponderance of the evidence." *United States v. Krasinski*,
545 F.3d 546, 551 (7th Cir. 2008) (citing *United States v. Soto-
Piedra*, 525 F.3d 527, 529 (7th Cir. 2008)).

on that date as hard and rock-like.[5] The district court concluded, based on the discrepancy between the first DEA chemist's description of the substance and Franklin's description of the substance, that the Government had failed to prove, *beyond a reasonable doubt*, that Mr. Bryant had conspired to distribute crack cocaine. R.144.

At Mr. Bryant's sentencing hearing, the district court found, based on the testimony presented at the bench trial,[6] that the Government had proven, *by a preponderance of the evidence*, that Mr. Bryant had conspired to distribute more than fifty grams of crack cocaine. The court therefore assigned Mr. Bryant a base offense level of 30 under the November 2007 Amendments to the Sentencing Guidelines.[7] The district court next applied a two-level enhancement for obstruction of justice based

---

[5] Although Franklin could recall the details of the April 8 transaction with specificity, he was unable to provide specific information about the amounts of drugs involved in any of his prior transactions with Mr. Bryant or the dates on which those transactions took place. Nor could he estimate the number of times he had purchased drugs from Mr. Bryant.

[6] The Government presented no new evidence at the sentencing hearing.

[7] Although the November 2007 Amendments were not in effect at the time Mr. Bryant was sentenced, the district court agreed, pursuant to Mr. Bryant's request, to sentence him under the November 2007 Amendments. The November 2007 Amendments partially ameliorated the sentencing disparity between crack and powder cocaine.

on its finding that Mr. Bryant intentionally had made material misrepresentations to the court during his first plea withdrawal hearing. It then denied Mr. Bryant's motion for a two-level reduction in offense level for acceptance of responsibility. As a result of these enhancements, the court determined that Mr. Bryant's offense level was 32.

Next, the district court assigned a criminal history category of IV to Mr. Bryant, based, in part, upon a state-court conviction for cocaine possession. Mr. Bryant claimed, however, that the conviction should not be considered for the purpose of determining his criminal history category; instead, he submitted, the conviction should be considered relevant conduct for sentencing purposes because the conviction involved similar conduct that had taken place during the time period of the conspiracy. The district court declined to deem the conviction relevant conduct.

The district court sentenced Mr. Bryant to 180 months' imprisonment, a sentence in the middle of the advisory guideline range for an individual of Mr. Bryant's criminal history category and offense level. Because Mr. Bryant was sentenced before the Supreme Court's decision in *Kimbrough v. United States*, ___ U.S. ___, 128 S. Ct. 558 (2007), the district court did not take the sentencing disparity between crack and powder cocaine into account when determining Mr. Bryant's sentence. Mr. Bryant subsequently filed this appeal.

## II

## DISCUSSION

Mr. Bryant raises the following arguments: (1) the district court abused its discretion in denying his second motion to withdraw his plea; (2) the district court clearly erred in finding that the Government had proven, by a preponderance of the evidence, that the charged conspiracy involved crack cocaine; (3) the district court clearly erred in applying a two-level enhancement for obstruction of justice based on the statements he made at his first plea withdrawal hearing; (4) the district court clearly erred in declining to apply a two-level reduction for acceptance of responsibility; (5) the district court clearly erred by increasing his criminal history score because of his state-court conviction for possession of cocaine base; and (6) his sentence should be vacated and remanded for resentencing in light of the Supreme Court's opinion in *Kimbrough,* 128 S. Ct. 558. We shall address each of these arguments in turn.

### A.

Mr. Bryant contends that the district court erred in denying his second motion to withdraw his guilty plea. We review a district court's denial of a motion to withdraw a plea for abuse of discretion. *United States v. Silva*, 122 F.3d 412, 414-15 (7th Cir. 1997). After a district court accepts a defendant's guilty plea and before it imposes a sentence, the court may permit the defendant to withdraw his plea provided that he "can show a fair and

just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B); *accord United States v. Underwood*, 174 F.3d 850, 852 (7th Cir. 1999). The defendant bears the burden of proving that a fair and just reason for withdrawal exists. *United States v. Coonce*, 961 F.2d 1268, 1275 (7th Cir. 1992).

Mr. Bryant claims that, immediately prior to his bench trial, he discovered new evidence that undermined the Government's case against him: He learned that the second DEA chemist had mishandled drug samples during the time period in which he evaluated the substance at issue in Mr. Bryant's case, and that the Government no longer intended to introduce the second chemist's report or the substance itself into evidence. Mr. Bryant contends that because he discovered new, relevant evidence after entering his plea, *see, e.g., United States v. Garcia*, 401 F.3d 1008, 1011 (9th Cir. 2005), and because the discovery of that evidence enabled him to make a legal argument that he was unaware of at the time of his plea, *see, e.g., United States v. Groll*, 992 F.2d 755, 759-60 (7th Cir. 1993), he has demonstrated a fair and just reason to withdraw his plea.

We cannot say that the district court abused its discretion in denying this motion. Unlike the defendant in *Garcia*, Mr. Bryant did not present newly discovered evidence relating to his factual guilt or innocence. *Garcia*, 401 F.3d at 1011-12 (concluding that the defendant's discovery of a new witness created a fair and just reason for withdrawal of the defendant's guilty plea because the witness' statement "raise[d] new questions about [the

defendant's] involvement in the illegal activity"). Additionally, unlike the defendant in *Groll*, Mr. Bryant did not introduce evidence that, at the time of his plea, he was unaware of a legal defense to the crime charged. *Groll*, 992 F.2d at 758, 759-60 (stating that "being legally innocent of the crime is a fair and just reason to withdraw a guilty plea" and concluding that the district court abused its discretion in denying the defendant's motion to withdraw her guilty plea when unrebutted evidence in the record could have supported her entrapment defense and the defendant may have been unaware of the entrapment defense at the time she pleaded guilty).

The evidence and legal arguments that Mr. Bryant relied upon in his motion at best relate to the strength of the Government's case against him, not his factual or legal innocence. As we previously have noted, "[a] defendant is not entitled to withdraw his plea merely because he has misapprehended the strength of the government's case." *Silva*, 122 F.3d at 415. When a defendant has been apprised of the facts giving rise to the charges against him, the mere fact that he does not know, at the time of his plea, what evidence the Government will use against him does not present a "fair and just" reason for him to withdraw his plea. *See Underwood*, 174 F.3d at 853-54 (concluding that "[the defendant's] reevaluation of his trial prospects afforded no basis for withdrawing his validly-entered guilty pleas"); *United States v. Seybold*, 979 F.2d 582, 587 (7th Cir. 1992) (noting that Rule 11 "does not require the trial judge at the plea hearing to air all of the government's evidence"). Furthermore, it is far from clear that Mr. Bryant's discovery of the problem with one

of the Government's chemists would have impacted his decision to plead guilty. Although Mr. Bryant pleaded guilty to the charged conspiracy, he specifically reserved for a bench trial the issues of the type and quantity of drugs involved in the conspiracy. In other words, he admitted to conspiring to possess and distribute drugs; he did not admit that the drugs he conspired to distribute included cocaine or cocaine base. The discovery of the chemist's mishandling of the evidence, however, relates *solely* to the issue of the type of drugs involved in the conspiracy, and is irrelevant to the question of whether Mr. Bryant conspired to distribute *any* controlled substance. As the district court noted, Mr. Bryant "necessarily challenged [the second chemist's] finding by saying he wasn't going to agree that [the substance] was crack." R.183-9 at 17. We therefore cannot say that the district court abused its discretion in rejecting Mr. Bryant's motion to withdraw his plea.

**B.**

**1.**

Mr. Bryant raises a number of challenges to the sentence imposed by the district court. Among his other arguments, Mr. Bryant contends, and the Government concedes, that his sentence should be vacated and remanded in light of the Supreme Court's decision in *Kimbrough v. United States*, ___ U.S. ___, 128 S. Ct. 558 (2007). We agree with the parties that Mr. Bryant preserved this issue. During the sentencing hearing, which was held before the Supreme Court's decision in

*Kimbrough*, Mr. Bryant maintained that the drugs involved in the conspiracy were not crack cocaine. As we held in *United States v. Padilla*, 520 F.3d 766, 774 (7th Cir. 2008), such a position is sufficient to preserve the *Kimbrough* issue. Accordingly, we vacate Mr. Bryant's sentence and remand for resentencing so that the district court may take into account the sentencing disparity between crack and powder cocaine when sentencing Mr. Bryant. We now turn to the remainder of Mr. Bryant's challenges to his sentence.

**2.**

Mr. Bryant challenges the district court's conclusion that the charged conspiracy involved crack cocaine. We review the district court's finding for clear error, *United States v. Wilson*, 437 F.3d 616, 621 (7th Cir. 2006), and shall reverse its decision "only if we are left with the definite and firm conviction that a mistake was made." *Padilla*, 520 F.3d at 769.

The Government was required to prove, by a preponderance of the evidence, that the charged conspiracy involved "crack" cocaine. *United States v. Johnson*, 200 F.3d 529, 537 (2000). Mr. Bryant claims that the Government's evidence on this issue, which consisted solely of the evidence presented at the bench trial, was insufficient to support the district court's finding. In particular, Mr. Bryant claims that Franklin's testimony was unreliable because, with the exception of the April 8 transaction, Franklin was unable to recall the details of any of the transactions in which he allegedly received crack cocaine

from Mr. Bryant. Mr. Bryant describes Franklin's testimony as an allegation "that, at some point in the past, though he doesn't remember exactly when, [Franklin] received some amount of crack cocaine [from Mr. Bryant], though he doesn't remember how much," and asserts that this vague testimony cannot support a finding that Mr. Bryant conspired to distribute more than fifty grams of crack cocaine. Appellant's Br. 28.

Although Franklin's testimony lacked specific details about the transactions in which he had obtained crack cocaine, it nevertheless contained sufficient details to support the district court's conclusion. Franklin was not able to recall the dates on which he received crack cocaine from Mr. Bryant or the specific quantities of crack cocaine he received. However, he did testify that each of the transactions involved more than sixty-three grams of crack cocaine. In addition, he provided detailed testimony about an occasion when he watched Mr. Bryant "cook" powder cocaine into crack cocaine. Furthermore, Franklin's testimony was not the only evidence presented to the district court on this issue; the Government introduced recorded conversations between Franklin and the informant, in which those two individuals discussed having Franklin's supplier "cook" the cocaine. It also introduced evidence that the substance that Franklin received on April 8 contained cocaine base. The district court was entitled to rely on this evidence, in its totality, in determining that the conspiracy involved crack cocaine. *See, e.g., Padilla*, 520 F.3d at 770-71 (noting that "the government can prove a substance is crack by offering testimony from people familiar with the

drug, *United States v. Anderson*, 450 F.3d 294, 301 (7th Cir. 2006), including . . . an informant's belief that he was purchasing crack"); *United States v. Earnest*, 185 F.3d 808, 813 (7th Cir. 1999) (recognizing that a court may rely on the testimony of experts and other witnesses in concluding that a substance is crack cocaine).

Mr. Bryant also suggests that, because the Government could not show that the substance contained sodium bicarbonate, it failed to prove, by a preponderance of the evidence, that the substance was crack cocaine. The Sentencing Guidelines distinguish between "cocaine base" and "cocaine" for sentencing purposes. U.S.S.G. § 2D1.1(c) ("Drug Quantity Table"). Although "greater punishment applies to cocaine base than to cocaine," *Lemon v. United States*, 335 F.3d 1095, 1095 (8th Cir. 2003), the Sentencing Guidelines did not define "cocaine base" until the Guidelines were amended in 1993. *United States v. Waters*, 313 F.3d 151, 155 (3d Cir. 2002). "Prior to 1993, circuit courts were divided over whether 'cocaine base' under § 2D1.1 included only 'crack,' or whether it also broadly encompassed all other substances the scientific community generally considered to be cocaine base." *United States v. Abdul*, 122 F.3d 477, 478 (7th Cir. 1997) (citations omitted) (discussing the conflicting definitions of cocaine base adopted by various courts). To resolve the conflict, the Sentencing Commission proposed an amendment to Section 2D1.1(c). *Id.* The amendment, which became effective in 1993, *id.* at 479, reads as follows:

"Cocaine base," for the purposes of [the Sentencing Guidelines], means "crack." "Crack" is the street name

for a form of cocaine base, usually prepared by pro-
cessing cocaine hydrochloride and sodium bicarbonate,
and usually appearing in a lumpy, rocklike form.

U.S.S.G. § 2D1.1(c) note (D) (hereinafter "Note D").[8]

Although "the definition of 'cocaine base' in the Guide-
lines makes it clear that only the 'crack' form of cocaine
base should receive the . . . sentencing enhancement
under § 2D1.1," *United States v. Jones*, 159 F.3d 969, 982
(6th Cir. 1998), the Guidelines do not explicitly define
"crack" in terms of its chemical composition, method of
manufacture or physical appearance. *See Waters*, 313
F.3d at 156 (noting that "there is no precise chemical
definition of crack cocaine," and concluding that "crack
generally refers more to the way the drug is prepared
and used than the specific chemical composition").
Perhaps due to the reference to sodium bicarbonate in
Note D and the absence of a specific definition of "crack,"
it has become common for individuals sentenced under
Section 2D1.1 to challenge whether a substance is, in
fact, crack cocaine. Often, as in the case before this
court, these challenges take the form of claims that the
substance at issue cannot be crack cocaine because it
does not contain sodium bicarbonate. *See, e.g., Abdul*, 122
F.3d at 478. We have rejected this argument. We have

---

[8] "Notes or commentary to the sentencing guidelines are
considered binding authority unless either violative of the
Constitution or a federal statute, or clearly inconsistent with
the guideline[s]." *United States v. Brooks*, 161 F.3d 1240, 1248
(10th Cir. 1998) (internal quotation marks and citations omitted).

held that, based on the use of the qualifying term "usually" in Note D, "crack" is not limited to cocaine that has been processed with sodium bicarbonate. *See id.* at 479 ("If courts were to disregard the qualifying term 'usually,' crack dealers could avoid the penalties for distribution of crack by merely finding some substitute for baking soda in production, or by crushing the rocks so that the final product resembles powder."). Other courts have reached similar conclusions. *See United States v. Whitehead*, 487 F.3d 1068, 1072 (8th Cir. 2007) ("[T]he government need not show the presence of sodium bicarbonate in order to prove that cocaine is crack. . . ."); *United States v. Eli*, 379 F.3d 1016, 1022 (D.C. Cir. 2004) ("The Sentencing Guidelines do not insist that crack can be made only with sodium bicarbonate; they merely state that it is 'usually prepared' that way." (internal citation omitted)); *Waters*, 313 F.3d at 155 ("[I]t is *not* necessary for the government to show that a substance contains sodium bicarbonate in order to demonstrate by a preponderance of the evidence that the drugs in question are crack cocaine."); *United States v. Brooks*, 161 F.3d 1240, 1248 (10th Cir. 1998) ("We interpret the qualifier 'usually' . . . as an acknowledgment that other methods of crack preparation exist and that not all forms of 'cocaine base' need contain sodium bicarbonate to qualify as crack for sentencing purposes. Indeed, it appears that the method which uses sodium bicarbonate is the least sophisticated and yields the lowest purity." (internal quotation marks and citations omitted)); *Jones*, 159 F.3d at 983 ("[T]he presence of sodium bicarbonate is not a necessary prerequisite to a district court's factual determination that cocaine base is crack.").

Our approach takes into account the fact that there are multiple methods of manufacturing crack cocaine. Indeed, we have stated expressly that "while crack might generally be produced using sodium bicarbonate, production with sodium bicarbonate is not the exclusive preparation method recognized for the purposes of § 2D1.1(c)." *Abdul*, 122 F.3d at 479. Two of our sister circuits have recognized that chemical compounds other than sodium bicarbonate, including sodium borate and niacinamide, may be used to convert powder cocaine into crack cocaine.[9] Furthermore, at least one expert has opined that, even where sodium bicarbonate is utilized to process powder cocaine into crack, the final product may not necessarily contain detectable quantities of sodium bicarbonate. *Waters*, 313 F.3d at 153 (referring to the statements of a DEA chemist who testified as follows: "If the conversion

---

[9] *United States v. Eli*, 379 F.3d 1016, 1022 (D.C. Cir. 2004) (holding that the district court did not clearly err in "conclud[ing] that the presence of sodium borate did not undermine the conclusion that the substance was crack," based, in part, on an expert's testimony that he: (1) had converted powder cocaine to crack using sodium borate; (2) had previously detected sodium borate in other crack samples; and (3) was aware that other chemists had detected sodium borate in crack samples); *United States v. Waters*, 313 F.3d 151, 156-57 (3d Cir. 2002) (noting an officer's testimony that "niacinamide is commonly used in the Philadelphia area as a substitute for sodium bicarbonate," and concluding that the district court did not err in finding that the substance at issue was crack cocaine).

is performed properly and you use the correct amounts of sodium bicarbonate and powdered cocaine . . . you should have no sodium bicarbonate left when the conversion is complete. However, traditionally, what we find is that out on the street an excess of this bicarbonate is used in the conversion." (internal quotation marks and citations omitted)).

Cases from this and other circuits establish, therefore, that the presence of sodium bicarbonate is not a litmus test for establishing that a substance is "crack" for the purposes of Section 2D1.1. Instead, courts have considered the following factors, among others, in determining whether a substance qualifies as crack for sentencing purposes: (1) whether "the substance at issue [has] tested positive for the presence of cocaine base";[10] (2) the color of the substance;[11] (3) the shape and texture of the substance;[12] (4) the method of packaging;[13] (5) the price of the

---

[10] *United States v. Brown*, 499 F.3d 817, 824 (8th Cir. 2007); *see also Brooks*, 161 F.3d at 1247, 1248-49; *United States v. Canales*, 91 F.3d 363, 368 (2d Cir. 1996) (concluding that the Guidelines were not ambiguous as applied to the defendant because, among other things, DEA reports indicated that the substance tested positive for the presence of cocaine base).

[11] *United States v. Morris*, 498 F.3d 634, 644 (7th Cir. 2007) ("yellowish-white" substance); *Canales*, 91 F.3d at 368 (white substance).

[12] *Morris*, 498 F.3d at 644 (noting that "[o]ther evidence corroborated the fact that the drugs in question were crack cocaine," including a DEA agent's testimony that "'the material . . . was

(continued...)

substance; and (6) whether the seller represents the substance as or understands the substance to be crack.[14] Indeed, a comprehensive analysis that focuses on not only the chemical composition of a substance but also its appearance and other properties, its packaging, and the representations associated with its sale is consistent with the congressional concerns that prompted the statutory sentencing disparity: crack's low cost, high availabil-

---

[12] (...continued)
kind of wet, which is not uncommon for crack'"); *Brown*, 499 F.3d at 824 ("rock" form); *Canales*, 91 F.3d at 368 ("chunky" substance).

[13] *Morris*, 498 F.3d at 644 (noting that testimony "describ[ing] the usual method for packaging crack" and indicating that the "drugs that were recovered were 'packaged for distribution' as crack cocaine" supported the district court's conclusion that "the drugs in question were crack cocaine and not some other form of cocaine base").

[14] *Eli*, 379 F.3d at 1021 n.7 (declining to decide whether the Government must prove that the substance would pass for crack on the streets, but concluding that, if such a requirement did exist, the requirement would be satisfied by the defendant's admission that the substance was crack and "by the fact that [the defendant] sold the drugs as 'crack' to an undercover officer"); *Canales*, 91 F.3d at 368 ("The street name 'crack' is not ambiguous, because crack has a common and ordinary meaning that is understood by [the defendant] . . . by others in the drug trade, and by citizens in communities that are plagued by the drug.").

ity and quick, intense high.[15] *See also United States v. Scott*, No. 08-2579, slip op. at 10 (7th Cir. Feb. 11, 2009) ("There are special dangers posed to society when cocaine is marketed in a form that makes it more readily available to a wider and more vulnerable part of our population."). Crack is not defined merely by its secondary ingredients; it is a "product," particularly dangerous because of its ability to reach a wide, susceptible market and produce, in that market, disastrous effects for both those who fall prey to its addictive allure and the people who come in contact with them.

Considering the concerns that gave rise to the sentencing disparity, we conclude that district courts may

---

[15] Although there is little legislative history discussing the reasoning behind the sentencing disparity between crack and powder cocaine, Congress' concern for the impact that crack would have on individuals and communities is clear. *See, e.g.,* 132 Cong. Rec. 26,447 (1986) (statement of Sen. Chiles) ("The whole Nation now knows about crack cocaine. They know it can be [bought] for the price of a cassette tape, and make people into slaves."); 132 Cong. Rec. 19,241 (1986) (statement of Sen. Chiles) ("Crack is available to the young, and it will be in the schools this fall. . . . We have all heard of cocaine, but I must stress to you that crack cocaine is something altogether different. It is more powerful; it is cheaper to use; it is also far more addictive. Crack cocaine is a purified form of powdered cocaine that is smoked. A hit of crack costs around $10, well within the budget of any teenager. When smoked, crack reaches the brain in less than 10 seconds. It produces a short but incredibly powerful high that is followed by an equally powerful low.").

rely on a number of factors, including those we have discussed, in determining whether a substance is crack. We restate our earlier conclusion that the Government need not prove that a substance contains sodium bicarbonate in order to establish, for the purposes of Section 2D1.1, that a substance is crack. Accordingly, we cannot say that the district court clearly erred in determining that Mr. Bryant conspired to distribute more than fifty grams of crack cocaine.

**3.**

The district court concluded that Mr. Bryant made material misrepresentations during his first plea withdrawal hearing, in which he claimed that he was pressured into pleading guilty and that his former attorney told him that he was unprepared for trial. Therefore, the district court imposed a two-level enhancement for obstruction of justice under Section 3C1.1 of the Sentencing Guidelines. U.S.S.G. § 3C1.1. We review for clear error the district court's factual finding underlying the decision to impose the enhancement. *United States v. Griffin*, 310 F.3d 1017, 1022 (7th Cir. 2002).

An obstruction of justice enhancement may be imposed when a defendant has "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. The obstructive conduct must be related to the "offense of conviction and any relevant conduct" or a "closely related offense." *Id.* "Committing, suborning, or

attempting to suborn perjury supports an obstruction enhancement." *Griffin*, 310 F.3d at 1023 (citing U.S.S.G. § 3C1.1 cmt. n.4(b)). "In order to find obstruction based on perjury, the sentencing court must find that the defendant willfully made misrepresentations under oath that were relevant to the prosecution, and specifically intended to obstruct justice." *United States v. Carroll*, 412 F.3d 787, 793 (7th Cir. 2005) (citing *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)).

Mr. Bryant claims that the Government failed to demonstrate that he made false representations with the intent to obstruct justice. Although he admits that the statements he made at the plea withdrawal hearing conflicted with his former attorney's testimony, he claims that the statements were an honest, though perhaps inaccurate, recollection of his discussions with his attorney. He asserts that his statements were not the result of a specific intent to obstruct justice, but, rather, were the product of his own misunderstanding and faulty memory.

The district court explicitly addressed the willfulness of Mr. Bryant's statements. It rejected his claim that he lacked specific intent to mislead the court:

> It wasn't that . . . [Mr. Bryant] perceived that [his attorney] wasn't prepared. The statements under oath were that Mr. Willis told him he had to plead guilty. . . . [T]here was nothing there about perception. It was actual statements.

R.183-11 at 3. The district court concluded, based on its observation of Mr. Bryant and his former attorney—the

only witnesses to testify at the plea withdrawal hearing—that Mr. Bryant "lied in his testimony." R.183-8 at 12. The district court was entitled to make this conclusion. The district court simply based its determination that Mr. Bryant had perjured himself on its evaluation of the sworn statements of Mr. Bryant and his former attorney. We cannot say that the court clearly erred in reaching its conclusion.

### 4.

The district court also determined that Mr. Bryant was not entitled to a two-level reduction for acceptance of responsibility. The Guidelines permit district courts to apply a two-level reduction when a defendant "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). The district court concluded, based on Mr. Bryant's statements at his first plea withdrawal hearing, that Mr. Bryant was not entitled to the two-level reduction.

The Government submits that the district court's conclusion was correct; it notes that conduct resulting in an obstruction of justice enhancement "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1 cmt. n.4.[16] In the Gov-

---

[16] *Accord United States v. Martinez*, 169 F.3d 1049, 1056 (7th Cir. 1999) ("Where a defendant falsely denies [ ] relevant conduct that the court determines to be true, he has acted in a manner

(continued...)

ernment's view, this is not the type of extraordinary case where both an obstruction of justice enhancement and an acceptance of responsibility reduction are warranted.

On the basis of this record, the district court reasonably could have determined that Mr. Bryant had not accepted responsibility for his conduct. Nevertheless, a statement made by the district court in the course of its proceedings gives us pause: The district court indicated that, because of Mr. Bryant's statements at his first plea withdrawal hearing, "there was obstruction, and, you know, it was [a] very foolish thing to do because legally that means there's no acceptance of responsibility." R.183-8 at 13. However, the district court later recognized that "there are exceptions where somebody may have obstructed justice and could be allowed to accept responsibility." R.183-11 at 6.

It is clear that, while a finding that a defendant obstructed justice "*ordinarily* indicates that the defendant has not accepted responsibility for his criminal conduct," U.S.S.G. § 3E1.1 cmt. n.4 (emphasis added), the application of an obstruction of justice enhancement does not necessitate the denial of a reduction in offense level for acceptance of responsibility. *See, e.g., United States v. Davis*, 442 F.3d 1003, 1009-10 (7th Cir. 2006) ("A defendant whose sentence was properly enhanced for obstruction

---

[16] (...continued)
inconsistent with the acceptance of responsibility, and the district court may refuse to grant this reduction." (internal citations and quotation marks omitted)).

of justice is presumed not to have accepted responsibility. . . . It is only under exceptional circumstances that a defendant who has received a sentence enhancement for obstruction of justice will be given a downward adjustment for acceptance [of] responsibility." (internal citations omitted)). Because we remand Mr. Bryant's sentence on other grounds, we need not determine whether the district court clearly erred in denying Mr. Bryant an acceptance of responsibility adjustment. The district court will have the opportunity to revisit this issue on remand.

**5.**

The parties agree that, during the relevant time period, Mr. Bryant pleaded guilty in Illinois state court to simple possession of less than fifteen grams of cocaine. At his sentencing hearing, Mr. Bryant argued that the state-court conviction should not be considered when calculating his criminal history category; instead, he maintained that it should be considered as relevant conduct for sentencing purposes, because the conduct giving rise to the conviction involved possession of distribution-level quantities of cocaine during the conspiratorial time period. In the district court, the Government disagreed with Mr. Bryant's contention: It asserted that the state-court conviction should not be considered relevant conduct because Mr. Bryant pleaded guilty to mere possession of, and not distribution of, cocaine. The Government also claimed that there was insufficient evidence for the court to find that the conduct underlying the

conviction was related to the charged conspiracy. In its argument, the Government suggested that the court could not use the information in the police reports and charging documents to determine whether the state-court conviction should be considered relevant conduct. R.183-11 at 10. On appeal, however, the Government now concedes that "the district court could have found that the . . . state case constituted relevant conduct." Government's Br. 35.

The district court rejected Mr. Bryant's claim that the conviction should be considered relevant conduct, concluding that it "[did not] have enough information to say that [the conviction was] part of th[e] conspiracy." R.183-11 at 15. Consequently, the court assigned Mr. Bryant a criminal history level of IV.[17]

When calculating a defendant's criminal history category, a district court may not consider prior convictions for acts which constitute relevant conduct—conduct that was part of the instant offense. U.S.S.G. § 4A1.2 cmt. n.1. Whether a prior conviction may be considered relevant conduct depends on the acts which gave rise to the conviction; as we have noted, the name of the offense to which a defendant pleaded guilty "cannot be the basis of the district court's [relevant conduct] determination, for . . . the sentencing guidelines direct courts to look to the underlying conduct of the offense, and not the name of

---

[17] The parties agree that, had the conviction been considered relevant conduct, Mr. Bryant would have been assigned a criminal history category of III.

the offense itself, when assessing relevant conduct." *United States v. Olson*, 408 F.3d 366, 374 (7th Cir. 2005) (instructing the district court to determine whether the defendant "possessed the drugs [involved in his plea to possession of a controlled substance] merely for his personal use, or with an intent to distribute") (citing *United States v. Garecht*, 183 F.3d 671, 674 (7th Cir. 1999) and *United States v. Wyss*, 147 F.3d 631, 632 (7th Cir. 1998)). *See* U.S.S.G. §§ 4A1.2, 4A1.2 cmt. n.1 (noting that, for the purpose of computing the defendant's criminal history level, a "prior sentence [is] any sentence . . . *for conduct* not part of the instant offense," as specified in Section 1B1.3 (emphasis added)); U.S.S.G. § 1B1.3(a)(2) (stating that relevant conduct includes "all *acts* and *omissions* . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction" (emphasis added)). Therefore, the district court must consider the acts giving rise to Mr. Bryant's state-court conviction and evaluate whether those acts and the charged conspiracy were either "part of a single episode, spree, or ongoing series of offenses," or "substantially connected to each other by . . . [a] common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3 cmt. n.9. Where the conduct underlying a prior conviction is unclear, the district court must "make specific factual findings regarding the underlying conduct . . . thereby clearly providing the basis for its ultimate resolution of the relevant conduct question." *Olson*, 408 F.3d at 374.

We cannot tell, based on the record before us, whether the district court ultimately concluded that it could not

consider the underlying police reports and charging documents in its relevant-conduct analysis. Certain statements indicate that the district court believed that it could consider only the conduct to which Mr. Bryant ultimately pleaded guilty in its relevant-conduct analysis.[18] Other statements, however, indicate that the district court simply did not have enough information to determine whether the conduct underlying the conviction was relevant to the charged conspiracy.[19] On remand, the district court will have the opportunity to further explain its reasoning and to conduct any fact-finding necessary to resolve this issue.

## Conclusion

In sum, we hold that the evidence of the DEA chemist's mishandling of evidence related solely to the strength of the Government's case and did not present a fair and just reason for Mr. Bryant to withdraw his guilty plea. Therefore, the district court did not abuse its discretion in rejecting Mr. Bryant's motion to withdraw his guilty plea. Furthermore, we conclude that the district court appropriately addressed the issues of whether the

---

[18] *See, e.g.*, R.183-11 at 14-15 ("I think if the government tried to say this was delivery of a controlled substance, you would be well within your rights to come back and say, 'Wait a minute. He pled guilty to possession, and that's all you can do,' so if it made a difference.").

[19] *See, e.g.*, R.183-11 at 15 ("I don't have enough information to say that it is part of this conspiracy. . . .").

charged conspiracy involved crack cocaine and whether an obstruction of justice enhancement was appropriate. Nevertheless, we vacate Mr. Bryant's sentence and remand for resentencing so that the district court may take into account the sentencing disparity between crack and powder cocaine when sentencing Mr. Bryant. On remand, the district court will also have the opportunity to address fully whether Mr. Bryant is entitled to an acceptance of responsibility adjustment and whether Mr. Bryant's state-court conviction for possession of cocaine constitutes relevant conduct for sentencing purposes. Therefore, Mr. Bryant's conviction is affirmed, but his sentence is vacated and his case is remanded to the district court for resentencing.

AFFIRMED in part, VACATED
and REMANDED in part